UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

United States District Court
Southern District of Texas
FILED

JAN 2 5 2007

Michael N. Milby, Clerk
Laredo Division

| | | |
|---|---|---|
| ANIMALE GROUP, INC.<br>and ANIMALE GROUP, S.A.;<br>*Plaintiffs*,<br>v.<br><br>SUNNY'S PERFUME, INC.; SUNIL<br>KUMAR TYAGI; BARAT GERA;<br>PARFUMS CLANDESTINE PARIS;<br>JOHN DOES 1-15; and XYZ<br>CORPS.<br>1-15;<br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. L-07-13<br><br>FILED UNDER SEAL PURSUANT<br>TO 15 U.S.C. § 1116 |

---

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS'** *EX PARTE* **APPLICATION FOR
TEMPORARY RESTRAINING ORDER, SEIZURE ORDER,
ASSET RESTRAINING ORDER, EXPEDITED DISCOVERY ORDER,
AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**

---

In support of their Ex Parte Application for Temporary Restraining Order, Seizure Order, Asset Restraining Order, Expedited Discovery Order, and Order to Show Cause for Preliminary Injunction, Plaintiffs Animale Group, Inc. and Animal Group, S.A., hereby file the foregoing Memorandum of Law:

## I.  INTRODUCTION

1.  Defendants Sunny Perfume, Inc., Sunil Kumar Tyagi, Barat Gera; Parfums Clandestine Paris, John Does 1-15; and XYZ Corps. 1-15 (collectively referred to herein as "Defendants") have, without authorization or consent, misappropriated Plaintiffs Animale Group, Inc. and Animale Group S.A.'s (collectively referred to herein as "ANIMALE") world famous trademarks for use in connection with their counterfeiting business. Specifically, Defendants offer for sale, sell and ship perfumes employing ANIMALE's trademarks. Defendants knowingly traffic in these counterfeit products in reckless disregard of trademark laws and ANIMALE's trademark rights.

1

2.      Defendants' willful and intentional infringement of ANIMALE's trademarks has and continues to irreparably harm ANIMALE, ANIMALE's trademarks, ANIMALE's reputation and goodwill, and ANIMALE's rightful market position. In view of the foregoing, ANIMALE respectfully requests that this Court issue: (i) a temporary restraining order against the Perfume Network's Defendants enjoining their manufacture, importation, exportation, distribution, offer for sale and sale of counterfeit products bearing ANIMALE's trademarks; (ii) a seizure order; (iii) an asset restraining order; (iv) an order for expedited discovery allowing ANIMALE to inspect and copy Defendants' books and records relating to the manufacture, exportation, distribution, offer of sale and sale of counterfeit products bearing ANIMALE's trademarks; and (v) an order to show cause why a preliminary injunction should not issue.

## II.   FACTUAL BACKGROUND

### a. ANIMALE's World Famous Trademarks and Products.

3.      ANIMALE is a leader in the design, marketing and distribution of fine fragrances. For more than twenty years, ANIMALE's reputation and distinctive image have been consistently developed through the marketing and sale of fine fragrances (the "ANIMALE Products"). ANIMALE's federally registered and common law trademarks, as referenced in ANIMALE's Original Complaint filed herewith (the "ANIMALE Marks"), are associated with a famous and widely-recognized brand. ANIMALE only sells its Products through authorized retailers.

4.      ANIMALE has carefully built its reputation by, among other things, adhering to strict quality control standards and its commitment to customer service. As such, the ANIMALE Products are manufactured pursuant to specific, stringent guidelines. In addition, ANIMALE spends substantial sums annually to advertise and promote the ANIMALE Products and ANIMALE Marks.

5.  As a result of ANIMALE's extensive marketing and promotional efforts, as well as the high quality of the ANIMALE Products, the ANIMALE Products have achieved an outstanding reputation among consumers. The ANIMALE Marks have become well and favorably known in the industry and to the public as the exclusive source of the ANIMALE Products, and have come to symbolize the goodwill of ANIMALE's Products. ANIMALE's marketing efforts, combined with its attention to quality, have resulted in over five million dollars in sales annually of the ANIMALE Products.

### b. Defendants' Sale of Counterfeit ANIMALE Products.

6.  ANIMALE recently learned that Defendants are selling counterfeit products labeled with the ANIMALE Marks, including at least the ANIMALE Ladies 3.4 ounce spray perfume ("ANIMALE Ladies") out of their storefront locations at 1302 Zaragoza St., Laredo, Texas and possibly 1320 Iturbide St., Laredo, Texas.[1] An investigator retained by ANIMALE went to Defendant's storefront at 1302 Zaragoza St., Laredo, Texas, and Defendants sold and delivered to ANIMALE's investigator a sample of product purported to be the ANIMALE Ladies 3.4 oz. spray perfume.[2]

7.  After inspection, it was confirmed by ANIMALE that the product was counterfeit.[3] An ANIMALE representative has reviewed the samples of the ANIMALE Ladies obtained by ANIMALE's investigator from Defendants, and confirmed that such samples are in fact counterfeit (the "Counterfeit Products").[4] Among other indicators:

---

[1] *See* Declaration of William M. Puerto, dated January 22, 2007, attached to ANIMALE'S Application for Temporary Restraining Order, *et al.* as **Exhibit A** ("Puerto Decl."), , and incorporated herein by reference as if expressly set out, ¶¶ 2-7.
[2] *Id.*, ¶¶ 4-7.
[3] *Id.*, ¶ 5.
[4] *See* Declaration of Jerome Falic, dated January 22, 2007, attached to ANIMALE'S Application for Temporary Restraining Order, *et al.* as **Exhibit B** ("Falic Decl."), and incorporated herein by reference as if expressly set out, ¶ 5-6.

3

- The packaging of the ANIMALE Ladies obtained from Defendants differs from that of the authentic product in terms of color and quality;

- The authentic product comes in boxes that are individually-wrapped in cellophane plastic and the suspected-counterfeit ANIMALE Ladies products obtained from Defendant's were not individually wrapped.[5]

8.  ANIMALE did not manufacture, inspect or package the ANIMALE Ladies purchased from Defendants, and did not approve the Counterfeit Products for sale and/or distribution.[6] ANIMALE did not authorize Defendants to manufacture, import, export, distribute, advertise, sell or offer to sell the ANIMALE Ladies.[7] ANIMALE has not had the opportunity to control the quality and nature of the ANIMALE Ladies being sold by Defendants.[8]

### III. ANIMALE IS ENTITLED TO A PRELIMINARY INJUNCTION ENJOINING DEFENDANTS' ACTS OF TRADEMARK COUNTERFEITING, INFRINGEMENT AND DILUTION

9.  Once a violation of the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.*, as amended (the "Lanham Act") is demonstrated, injunctive relief will readily issue pursuant to Section 34 thereof, 15 U.S.C. § 1116.[9] Courts have granted preliminary relief when a party's proprietary rights are threatened by the sale of potentially inferior versions of its products, bearing marks or ornamentation indicating affiliation with the moving party. Courts base this relief on the trademark holder's "inability to control the nature and quality of the infringer's goods . . . not because the infringer's goods are necessarily inferior."[10]

---

[5] *Id.*
[6] *Id.*, ¶ 6.
[7] *Id.*
[8] *Id.*
[9] Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.*
[10] *Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb, Inc.*, 698 F.2d 862 (7th Cir. 1983);

4

10. There are four prerequisites for the extraordinary relief of a temporary restraining order or preliminary injunction. To prevail, a plaintiff must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of immediate and irreparable harm, for which he has no adequate remedy at law; (3) that greater injury will result from denying the temporary restraining order than from its being granted; and (4) that a temporary restraining order will not disserve the public interest.[11] The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted.[12] To prevail on a trademark infringement claim, the plaintiff must show "(1) that the mark or trade dress, as the case may be, qualifies for protection and (2) that [defendant's] use of the mark or trade dress creates a likelihood of confusion in the minds of potential consumers."[13] To be a valid trademark that can be federally registered, "a mark must be capable of distinguishing the applicant's goods from those of others," or "distinctive."[14] A registered trademark "shall be prima facie evidence of the validity" of the registered owner's exclusive right to use the mark in commerce.[15] However, in a Lanham Act action, injunctive relief is proper merely by a showing a likelihood of confusion or deception.[16] As shown below, ANIMALE meets each of these criteria.

---

*Waples-Platter Companies v General Foods Corp.*, 439 F. Supp. 551, 574 (D.C. Tex 1977) ("since the relevant consideration is the prior user's loss of exclusive control over his mark and his good will, the actual quality of the subsequent user's product is normally immaterial").
[11] *Guy Carpenter & Co v Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003); *Clark v Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); Canal Auth. of the State of Florida v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974) (en banc)
[12] *Mississippi Power and Light Co v United Gas Pipeline*, 760 F.2d 618 (5th Cir. 1985).
[13] *Pebble Beach Co v Tour 18 Ltd*, 155 F.3d 526 at 536 (5th Cir. 1998)
[14] *Test Masters Educ. Servs., Inc v Singh*, 428 F.3d 559 (5th Cir. 2000) (abrogated on other grounds by *TrafFix Devices, Inc v Marketing Displays, Inc*, 532 U.S. 23, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001))
[15] 17 U.S.C. § 1115.
[16] *See Ramada Franchise Sys., Inc v Jacobcart, Inc*, 2001 WL 540213, at 3 (N.D. Tex. May 17, 2001) (Fitzwater, J.) ("In a trademark infringement case, 'a substantial likelihood of confusion constitutes irreparable injury.'" (quoting *KFC Corp. v Goldey*, 714 F. Supp. 264, 267 (W.D. Ky. 1989)); *see also Joy Mfg. Co v CGM Valve & Gauge Co*, 730 F.Supp. 1387, 1394 (S.D. Tex. 1989) ("When a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods constitutes immediate and irreparable harm, regardless of the actual quality of the defendant's goods."); Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc., 510 F.2d 1004, 1013 (C.A. Tex. 1975).

### a. Defendants' Sale of Their Counterfeit Products Is Irreparably Harming the ANIMALE Marks and the Goodwill Associated Therewith.

11. Courts in this circuit have stated that establishing a high probability of confusion as to source or sponsorship almost inevitably establishes irreparable harm to a trademark owner, and, in a Lanham Act action, injunctive relief is proper merely by a showing a likelihood of confusion or deception.[17]

12. As set forth below, ANIMALE can demonstrate that it owns the ANIMALE Marks and that a likelihood of confusion will result from Defendants' sale of the ANIMALE Ladies using almost identical counterfeit marks.[18] As Defendants have already sold ANIMALE Ladies to ANIMALE's investigators and continue to sell even more counterfeit ANIMALE Ladies, the irreparable harm the ANIMALE Marks faces is continually exacerbated.[19] Finally, Defendants' sale of their ANIMALE Ladies puts inferior products over which ANIMALE has no control on to the market for purchase by consumers. Consumers will associate the poor quality of the ANIMALE Ladies with ANIMALE, thereby forever damaging ANIMALE's goodwill and reputation.

### b. ANIMALE Will Likely Prevail on its Claims for Trademark Counterfeiting and Trademark Infringement

13. To prevail on a trademark infringement claim, the plaintiff must show "(1) that the mark or trade dress, as the case may be, qualifies for protection and (2) that [defendant's] use of the mark or trade dress creates a likelihood of confusion in the minds of potential consumers."[20] Additionally, the plaintiff must prove that the defendant used

---

[17] *See Id.*, and *Omega Importing Corp. v Petri-Kline Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971); *see also Home Box Office, Inc. v Showtime/Movie Channel, Inc.*, 832 F.2d 1311 (2d Cir. 1987) (a showing of likelihood of confusion as to source or sponsorship establishes the risk of irreparable harm as well as the requisite likelihood of success on the merits).
[18] *See* Section III.B.
[19] *See* Puerto Decl., ¶ 3.
[20] *Pebble Beach Co. v Tour 18 Ltd*, 155 F.3d 526 at 536 (5th Cir. 1998).

the plaintiff's mark "in commerce." [21] The two causes of action, trademark infringement and unfair competition under Texas common law, require the same standard and type of proof. [22]

### i. The ANIMALE Marks Are Valid and Protectable

14. Through its pleadings and the accompanying declarations, ANIMALE has introduced evidence verifying its ownership of federal registrations for the ANIMALE Marks.[23] These registrations are *prima facie* evidence of the validity of the trademarks ANIMALE seeks to protect, as well as ANIMALE's exclusive rights to use the ANIMALE Marks in commerce on or in connection with the goods or services specified in the registration certificates.[24] Furthermore, ANIMALE has used, and is currently using, the ANIMALE Marks in commerce on or in connection with its sale of the authentic ANIMALE products and plan to continue such use in the future.[25] Accordingly, ANIMALE has introduced evidence sufficient to create a likelihood that it will prevail on this first element of its claims for trademark counterfeiting and infringement.

### ii. Consumers Are Likely To Be Confused As To The Source of Defendants' Counterfeit Products.

15. Under the well-established test in the Fifth Circuit, the fact finder must consider eight factors in determining whether a party's alleged infringement of another's trademark is likely to cause confusion among product consumers. These factors include: (1) the strength of the plaintiff's trademark; (2) the similarity of design between the parties' trademarks; (3) the similarity of the parties' products; (4) the identity of retail

---

[21] *See Quaker Oats v Sands, Taylor & Wood Company*, 978 F.2d 947, 958 (7th Cir. 1992).
[22] *See Marathon Manufacturing Co. v Enerlite Products Corp.*, 767 F.2d 214, 217 (5th Cir. 1985) ("As a general rule, the same facts which would support an action for trademark infringement would also support an action for unfair competition") (citing *Boston Professional Hockey Ass'n v Dallas Cap & Emblem Manufacturing*, 510 F.2d 1004, 1009-10 (5th Cir. 1975), *cert. denied*, 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975)).
[23] *See* Falic Decl. ¶ 2.
[24] *See* 15 U.S.C. § 1057(b).
[25] *See* Falic Decl., ¶ 5, and Puerto Decl., ¶¶ 2-6.

7

outlets and purchasers; (5) the similarity of advertising media; (6) the defendants' intent; (7) actual confusion; (8) and the degree of care exercised by potential purchasers. [26] In determining whether Defendants created a likelihood of confusion, the factfinder must consider and weigh the importance of all of the factors listed here; there is no firm rule requiring that a specific number, or even a majority, of these factors be satisfied.[27] No one factor is dispositive and different factors will weigh more heavily from case to case depending on the particular facts and circumstances involved. [28] "The gravamen for any action of trademark infringement or common law unfair competition is whether the challenged mark is likely to cause confusion." [29] "Intent to pass off one's goods as those of another can provide compelling evidence of likelihood of confusion."[30]

16. The applicable *Oreck Corp.* factors favor a finding that ANIMALE is likely to succeed in showing a likelihood of confusion resulting from Defendants' acts of trademark counterfeiting. The ANIMALE Marks are famous, and are both commercially and inherently strong.[31] Moreover, the ANIMALE Ladies products sold by Defendants employ trademarks that are identical to or substantially indistinguishable from those appearing on genuine ANIMALE products.[32] Furthermore, Defendant's ANIMALE Ladies is the same type of product sold by ANIMALE, *i.e.* perfume, and is sold by Defendants to the same consumers.[33] Finally, the ANIMALE Ladies sold by Defendants is clearly designed and sold to fool others into believing that it is genuine ANIMALE

---

[26] *See Oreck Corp. v U.S. Floor Systems, Inc.*, 803 F.2d 166, 170 (5th Cir. 1986), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871; *Brandtjen*, 765 F.Supp. 1551, 1565 (N.D.Tex.1991).
[27] *See Oreck*, 803 F.2d, at 170; and *Brandtjen*, 765 F. Supp., at 1565.
[28] *See Marathon Mfg. Co. v Enerlite Prods. Corp.*, 767 F.2d 214, 218 (5th Cir. 1985) (per curiam), and the plaintiff need not support a claim by a majority of the factors, *Amco, Inc. v Amco Burglar Alarm Co., Inc.*, 693 F.2d, 1155, 1159 (5th Cir. 1982).
[29] *Marathon Manufacturing*, 767 F.2d at 217 (5th Cir.1985) (citations omitted); *see also Society of Financial Examiners v National Ass'n of Certified Fraud Examiners, Inc.*, 41 F.3d 223, 225 (5th Cir. 1995), *cert. denied*, 515 U.S. 1103, 115 S.Ct. 2247, 132 L.Ed.2d 255..
[30] *Brandtjen & Kluge, Inc v Prudhomme*, 765 F.Supp. at 1568, *supra*
[31] *See* Falic Decl., ¶¶ 2-6.
[32] *Id.* ¶ 5 and Ex. A; *see also* Puerto Decl. ¶¶ 2-7.
[33] *See* Falic Decl., ¶¶ 2-5; *see also* Puerto Decl. ¶¶ 2-7.

8

product. Thus, ANIMALE can demonstrate a likelihood of confusion, and is likely to prevail on its claims for trademark counterfeiting and infringement.

### c. ANIMALE Will Likely Prevail on Its Dilution Claim

17. ANIMALE has brought claims against Defendants for dilution of its trademark under the Lanham Act and the Texas Anti-Dilution Act. ANIMALE will likely prevail on both claims. Section 1125(c) of the Lanham Act provides that the owner of a famous mark shall be entitled "to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark."[34] The statute defines "dilution" as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of . . . (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake or deception."[35] To establish a violation of Section 1125(c), a plaintiff must show that: (1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services.[36] Conversely, in order to establish a dilution claim under the Texas Anti-Dilution Statute, plaintiff need only show that it owns a distinctive mark and that there is a likelihood of dilution.[37] Unlike the federal anti-dilution statute, which requires that a defendant's acts constitute a "commercial use" of a registered mark, the broader Texas version does not contain language requiring a commercial use.[38]

---

[34] See 15 U.S.C.A. § 1125(c)(1).
[35] Id., § 1127.
[36] See Savin Corp. v Savin Group, 391 F.3d 439, 448-49 (2d. Cir. 2004).
[37] See Pebble Beach Co. v Tour 18 I, Ltd., 942 F.Supp. 1513, 1564 (S.D. Tex. 1996), aff'd, 155 F.3d 526 (5th Cir. 1998).
[38] Id.

9

Under the Texas statute, there is no requirement that the plaintiff and defendant be business competitors or that likely consumer confusion exist. [39]

### i. The ANIMALE Marks Are Famous

18. "Distinctiveness for dilution purposes often has been equated with the strength of a mark for infringement purposes." [40] Distinctiveness can be proved through the uniqueness of the mark or because it has acquired a secondary meaning. [41] A registered mark is "presumed to be distinctive and should be afforded the utmost protection."[42] To establish the first factor of a dilution claim in the Second Circuit, a plaintiff must show that its mark possesses both a "significant degree of inherent distinctiveness" and, to qualify as famous, "a high degree of . . . acquired distinctiveness."[43] The Texas statute does not require a mark to be famous in order for it to be distinctive. [44] As set forth above, ANIMALE's Marks are registered, and ANIMALE has invested heavily in advertising resulting in millions of dollars of sale of goods under the ANIMALE Marks over a period of more than twenty five years.[45] Accordingly, the ANIMALE Marks have a high degree of acquired distinctiveness, and, in turn, ANIMALE is likely to succeed in showing that its Marks are famous.

### ii. Defendants Are Making Commercial Use of the ANIMALE Marks that Began Well After ANIMALE's Use.

19. ANIMALE has set forth substantial evidence above of the second and third factors on its dilution claim, *i.e.* that Defendants are making commercial use of the ANIMALE Marks and that Defendants' activities began well after the first use of the

---

[39] *See Exxon Corp. v Oxxford Clothes, Inc.*, 109 F.3d 1070, 1081 (5th Cir. 1997), *cert. denied*, 522 U.S. 915, 118 S.Ct. 299, 139 L.Ed.2d 231 (1997).
[40] *Mead Data Cent., Inc*, 875 F.2d 1026, 1030 (2d. Cir. 1989).
[41] *See id* at 1032.
[42] *Lois Sportswear, U.S.A., Inc v Levi Strauss & Co*, 799 F.2d 867, 871 (2d Cir. 1986).
[43] *Id.* at 449.
[44] *See Advantage Rent-A-Car, Inc v Enterprise Rent-A-Car Co*, 238 F.3d 378, 380-81 (5th Cir. 2001).
[45] *See* Falic Decl., ¶¶ 2-4.

10

ANIMALE Marks.[46] Accordingly, ANIMALE is likely to succeed on these elements of its dilution claim.

### iii. Defendants' Counterfeiting Activities Dilute the ANIMALE Marks.

20. Under federal law, trademark dilution may be proved through circumstantial evidence when the senior mark and the junior mark are identical.[47] Where a plaintiff who owns a famous senior mark can show the commercial use of an identical junior mark, such a showing constitutes circumstantial evidence of the actual-dilution element of [a dilution] claim.[48] As set forth above, Defendants' ANIMALE Ladies products employ marks that are identical to the ANIMALE Marks. As a result, Defendants' conduct creates the very real likelihood that, if left unchecked, the value of the ANIMALE Marks will be diluted through blurring and/or tarnishment. ANIMALE is, therefore, likely to prevail on its dilution claims.

### d. This Court May Issue an *Ex Parte* Seizure Order.

21. Once a violation of the Lanham Act is demonstrated, the issuance of an *ex parte* seizure order is appropriate upon a showing that: (i) the person obtaining the order will provide adequate security; (ii) an order other than an *ex parte* seizure order is not adequate to achieve the purposes of 15 U.S.C. § 1114; (iii) the applicant has not publicized the requested seizure; (iv) the applicant is likely to succeed in showing the defendant used a counterfeit mark; (v) an immediate and irreparable injury will occur if such seizure is not ordered; (vi) the materials to be seized will be located at the place identified in the application; (vii) the harm to the applicant in denying the application outweighs the harm to the legitimate interests of the person against whom seizure would

---

[46] *See* Section II.A-B; *see also* Section III.A-B.
[47] *See Moseley v. V. Secret Catalogue, Inc.*, 537 U.S. 418, 434, 123 S.Ct. 1115, 155 L.Ed.2d 1 (2003).
[48] *Kinetic Concepts, Inc. v. Bluesky Medical Group, Inc.* 2005 WL 3068223, *3 (W.D. Tex. 2005 (not designated for publication), citing with approval *Savin Corp. v. Savin Group*, 391 F.3d 439 (2d. Cir. 2004)

11

be ordered; and (viii) if the applicant were to proceed on notice to the defendant, the defendant or persons acting in concert with defendant would destroy, move, hide, or otherwise make such matter inaccessible to the court.[49]

22. Where, as here, each of the statutory elements are satisfied, it is an abuse of discretion to deny an *ex parte* seizure order.[50] In granting plaintiff an *ex parte* seizure order, one district court stated that notice of the restraining order without seizure:

> would be likely to result in the disappearance of the counterfeit FILA goods and related records, or the "dumping" or transfer of the counterfeit goods to unknown third parties jeopardizing plaintiff's ability to prevent irreparable injury, to stop distribution of counterfeit FILA products and to determine the source and extent of the defendants' dealings.[51]

Perceiving the unfortunate reality of this situation, the covert nature of bootlegging activities and the vital need to establish an economic disincentive for trademark counterfeiting, district courts in this Circuit and others now regularly issue *ex parte* seizure orders.[52]

23. Here, ANIMALE meets each of the criteria for issuance of a seizure order required by the Lanham Act. ANIMALE has indicated the willingness and ability to

---

[49] *See* 15 U.S.C. § 1116(d)(4)(B).
[50] *Vuitton v White*, 945 F.2d 569, 575-76 (3d. Cir. 1991) (discussing the legislative history of §1116(d) that "ex parte seizures ... [are] a necessary tool to thwart the bad faith efforts of fly by night defendants to evade the jurisdiction of the court"); *see also Lorillard Tobacco Company v Bisan Food Corp.* 2004 WL 1682766 (3rd Cir. July 28, 2004).
[51] *Fimab-Finanziaria Maglificio, v Ketchen*, 548 F. Supp. 248, 250 (S.D. Fla. 1982).
[52] *See, e.g., North Face Apparel Corp. v Reliance Department Stores, et al.*, S.D.N.Y. 03 CV 9596; *Cartier International B.V., et al v Sam Liu, et al*, S.D.N.Y. 02 CV 7926 (TPG); *Fila U.S.A., Inc v Top Luxor Trading*, C.D. Cal., CV98-5187(RNB); *Reebok Int'l Ltd v Byron McLaughlin, et al*, S.D. Cal., 89 Civ. 1739-T; *Reebok Int'l Ltd v Mamatech Enterprises, Inc*, C. D Cal., 89-1361 GT; *Fila USA, Inc v Eidai International, et al.*, Dist. of Hawaii, 93-0083 DAE; *Reebok Int'l Ltd v Fairgulf Int'l Shipping and Trading, U.S.A., Inc*, W.D. Texas, 93 Civ. 391; *The Keds Corp. v Pete Castello et al.*, M.D. Fla., 93 Civ. 371 (ORL) 22; *Reebok Int'l v Stanley Zitron, et al.* W.D. Tenn. 92 Civ-2644 (CHA).

12

provide a bond to the Court in conjunction with the *ex parte* relief that it seeks.[53] ANIMALE has not publicized the requested seizure.[54] ANIMALE will succeed in showing that Defendants have sold counterfeits of the ANIMALE Ladies perfume, and irreparable harm will flow therefrom.[55] ANIMALE has submitted evidence showing that the materials to be seized will be located at Defendants' two business locations in Laredo, Texas, and that Defendants have already sold counterfeit ANIMALE Ladies to ANIMALE's investigators.[56] Finally, given the nature of Defendants' counterfeiting operations and as set forth in detail above and below, an order other than an *ex parte* seizure order is not adequate to achieve the purposes of 15 U.S.C. § 1114; the harm to the ANIMALE Marks and goodwill in denying the application outweighs the harm to Defendants' interests in continuing to sell ANIMALE Ladies; and if ANIMALE was to proceed on notice to Defendants, Defendants or persons acting in concert therewith would likely destroy, move, hide, or otherwise make such matter inaccessible to the court.[57]

### e. ANIMALE Is Entitled to an Order Restraining Defendants' Transfer of Assets.

24. ANIMALE ultimately will be entitled to an equitable accounting of Defendants' profits from sales of Defendants' ANIMALE Ladies. Multiple circuit courts have made clear that a district court has the inherent authority pursuant to the Lanham Act to issue an order restraining a defendant's assets so that a plaintiff's right to an equitable accounting is not later rendered meaningless. This is consistent with long standing practices in the Fifth Circuit, which provide that "the framing of an injunctive decree responsive to the particular facts in a trademark infringement and unfair

---

[53] *See* ANIMALE's [Proposed] Order, filed herewith.
[54] *See Declaration of L. Bradley* Hancock, dated January 25, 2007, attached to ANIMALE'S Application for Temporary Restraining Order, *et al.*, as Exhibit C, and incorporated by reference herein as if expressly set out;
[55] *See, supra*, Sections III.A-C.
[56] *See* Puerto Decl., ¶¶ 4.
[57] *See, supra*, Section III.A-D and *infra* Section III.G; *see also* Falic Decl. and Puerto Decl.

13

competition suit is ordinarily within the domain of the trial court," and that "every means of preventing continuance of deceptive practices is proper."

25. In *Reebok v. Marnatech*, the Ninth Circuit affirmed the District Court's grant of an asset restraint, stating that "because the Lanham Act authorizes the District Court to grant Reebok an accounting of Betech's profits as a form of final equitable relief, the District Court has the inherent power to freeze Betech's assets in order to ensure the availability of that final relief." In determining whether to issue an order restraining a defendant's assets, the Court of Appeals stated a plaintiff must show: (1) a likelihood of success on the merits; (2) immediate and irreparable harm as a result of defendants' counterfeiting activities; and (3) that defendants might hide their illegal ill-gotten funds if their assets were not frozen.

26. As set forth above, ANIMALE has shown that it is likely to succeed on the merits of its claims, and that it will suffer irreparable injury from Defendants' sale of ANIMALE Ladies. Defendants are also likely to hide their assets. Defendants trade in counterfeit goods; thus, unlike a legitimate business, Defendants have no reason to keep monies in their bank accounts once their counterfeiting scheme is uncovered. Indeed, that Defendants' business is the sale of counterfeit goods is further evidenced by their suspicion of ANIMALE's investigator as a potential customer and refusal to do business with people with whom they were not familiar.[58] In light of the fact that Defendants trade in counterfeit goods, it is reasonable to believe that Defendants will move quickly to remove monies subject to an equitable accounting to locations and accounts which neither ANIMALE nor this Court will ever discover. Thus, an asset restraining order limiting the transfer of Defendants' assets is critical to maintain the status quo and preserve ANIMALE's right to an equitable accounting.

---

[58] *See* Puerto Decl., ¶ 2.

14

### f. ANIMALE Is Entitled To Expedited Discovery.

27. District courts have broad power to permit expedited discovery allowing ANIMALE to take early depositions and to require early document production in appropriate cases.[59] Expedited discovery may be granted when the party seeking it demonstrates: (1) irreparable injury; (2) some likelihood of success on the merits; (3) some connection between expedited discovery and the avoidance of irreparable injury; and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that defendant will suffer if expedited relief is granted.

28. ANIMALE is being irreparably harmed by Defendants' manufacture, importation, offering for sale and sale of the ANIMALE Ladies. ANIMALE, therefore, needs without delay to ascertain Defendants' sources of the ANIMALE Ladies, and any pending sales, shipments or shipments en route. Only armed with that information can ANIMALE seek to amend the complaint and temporary restraining order and/or preliminary injunction to include other entities manufacturing for or supplying Defendants with the ANIMALE Ladies.

29. The discovery requested on a expedited basis in ANIMALE's proposed temporary restraining order has been precisely defined and carefully limited to include only what is essential for the preliminary injunction. Discovery of Defendants' import, distribution and sale of the ANIMALE Ladies and unauthorized use of the ANIMALE Marks will permit ANIMALE to gain a full and accurate picture of Defendants' infringing activities and ensure that these activities will be contained. Specifically, ANIMALE needs to obtain copies of shipping, import and export documents, including bills of lading, purchase orders, and certificates of origin to discover details regarding (1) pending shipments and (2) the location of ANIMALE Ladies which are sold by

---

[59] *See* FED. R. CIV. P. 30(b) & 34(b).

15

Defendants and/or have already been exported and distributed throughout the United States and the world. Furthermore, the proposed temporary restraining order includes a protective order regarding any documents seized or copied by ANIMALE

30.  ANIMALE is unaware of any reason that Defendants cannot comply with these requests without undue burden. More important, as stated in the supporting declarations and *supra*, Defendants have engaged in numerous deceptive practices that indicate ANIMALE may lose the opportunity for meaningful discovery about the requested relief. Accordingly, the request for expedited discovery should be granted.

## IV.  CONCLUSION

31.  Based upon the foregoing, ANIMALE respectfully urges this Court to grant an order temporarily restraining Defendants from selling their ANIMALE Ladies or any unauthorized use of the ANIMALE Marks, an order of seizure, an order to show cause for preliminary injunction and an order for expedited discovery.

Respectfully submitted,

GREENBERG TRAURIG LLP

By: _____
L. Bradley Hancock
State Bar No.: 00798238
Federal Bar No.: 21091

1000 Louisiana, Suite 1800
Houston, Texas 77002
(713) 374-3500 - Telephone
(713) 374-3505 - Facsimile

ATTORNEY-IN-CHARGE FOR PLAINTIFF'S ANIMALE GROUP, INC. AND ANIMALE GROUP, S.A.

OF COUNSEL:

GREENBERG TRAURIG, L.L.P.

Christopher C. Miller
State Bar No.: 24013163
Federal Bar No.: 29716
1000 Louisiana, Suite 1800
Houston, Texas 77002
(713) 374-3500 - Telephone
(713) 374-3505 - Facsimile