O

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# LAREDO DIVISION

| | |
|---|---|
| ANIMALE GROUP, INC.; and § <br> ANIMALE GROUP, S.A., § <br> *Plaintiffs*, § <br> § <br> v. § <br> § <br> SUNNY'S PERFUME, INC.; SUNIL § <br> KUMAR TYAGI; BHARAT GERA; § <br> PARFUMS CLANDESTINE PARIS; § <br> JOHN DOES 1-15; and XYZ CORPS. 1- § <br> 15, § <br> *Defendants*. § | CIVIL ACTION NO. 5:07-cv-13 |

## OPINION & ORDER

Pending before the Court is Defendants Bharat Gera and Parfums Clandestine Paris' Motion to Dismiss for Lack of Personal Jurisdiction, [Dkt. No. 20]; Motion to Stay Preliminary Injunction, [Dkt. No. 27]; and Plaintiff's Motion for Continuance to Conduct Jurisdictional Discovery, [Dkt. No. 34]. Upon due consideration of the filings and the governing law, the Court GRANTS Defendants Motion to Dismiss, DISMISSES their Motion to Stay as moot, and DENIES Plaintiff's Motion for Continuance.

### I.  PROCEDURAL BACKGROUND AND RELEVANT FACTS

Plaintiff Animale is a Florida corporation in the business of manufacturing and distributing perfumes. [Dkt. No. 29, ¶¶ 5, 17]. Defendant Sunny's Perfume, owned and operated by Defendant Sunil Kumar Tyagi, is a retail vendor of perfumes in Laredo, Texas. [Dkt. No. 14]. Defendant Bharat, a citizen of New York, is President of Defendant Parfums Clandestine Paris

(PCP), a New York corporation with its principle place of business in that state. [Dkt. No. 20, ¶ 4].

Sometime in 2006, Plaintiff began to suspect that Defendants were engaged in the distribution and sale of counterfeit Animale products. After preliminary investigation, Plaintiff, on February 25, 2007, filed suit against Defendants, claiming trademark infringement, among other causes of action. [Dkt. No. 29]. That same day, Plaintiff applied for a temporary restraining order (TRO), prohibiting Defendants from further infringement, and limiting the transfer or disposition of any funds, documents or other material relating to Defendants' alleged infringement. [Dkt. No. 4]. On February 26th, the Court granted the TRO, and ordered Defendants to appear and show cause as to why the Court should not grant a preliminary injunction pending permanent resolution of Plaintiff's claims. [Dkt. No. 8]. The preliminary injunction hearing was held on February 6, 2007, during which Defendants PCP and Gera, pursuant to Federal Rule of Civil Procedure 12(b)(2), filed the Motion to Dismiss for Lack of Personal Jurisdiction now before the Court. [Dkt. Nos. 18, 20]. The Court deferred disposition of that Motion until a later date. Thus, based on testimony offered at the hearing, and on exhibits in the record at the time, the Court issued its Preliminary Injunction and Order Restraining Assets, which currently remains in effect as to all Defendants, including PCP and Gera. [Dkt. No. 21].

On February 26, 2007, the day on which its allotted time to respond to Defendants' Motion to Dismiss expired, Plaintiff moved for a continuance. [Dkt. No. 33]. Specifically, Plaintiff seeks to engage in jurisdictional discovery for the purposes of uncovering all facts that might establish Defendants PCP and Geras' minimum contacts with Texas. Alternatively, Plaintiff filed a Response to Defendants' Motion to Dismiss in which it argues, first, that the record as it currently stands adequately establishes PCP and Geras' minimum contacts with Texas; and,

second that Defendants have waived their jurisdictional objections by way of their participation in the February 6th preliminary injunction hearing. [Dkt. No. 32, ¶¶ 20-24].

## II.  DISCUSSION

### A.  Waiver

Plaintiff argues that "[d]uring [the] hearing, Defendants Gera/PCP never raised an objection to personal jurisdiction or expressly made any request or examination subject to such an objection." [Dkt. No. 32, ¶ 23]. Actually, Defendants first tendered their Motion to Dismiss for Lack of Personal Jurisdiction at the beginning of the hearing, and failed to do so earlier only because they were untimely served merely one day prior. [Dkt. No. 20, ¶ 3]. Plaintiff is apparently of the belief that a party's defense of a suit on the merits, even subsequent to filing jurisdictional objections, waives the latter. This is not the law.

"In all federal courts, including those exercising diversity jurisdiction, the principal method for attacking the court's jurisdiction over the person of a defendant . . . is a Rule 12(b)(2) motion." *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 490 (5th Cir. 1974). Thus, "[a] party may file a general appearance and object to personal jurisdiction or venue at any time before an answer is filed or may make such objection along with the answer." *Williams v. Canon, Inc.*, 432 F. Supp. 376, 382 (C.D. Cal. 1977) (citing *Hays v. United Fireworks Mfg. Co.*, 420 F.2d 836 (9th Cir. 1969)); *see also SEC v. Wencke*, 783 F.2d 829, 833 (9th Cir. 1986) ("[C]ounsel could have presented evidence, questioned witnesses, or raised arguments on the merits of the disgorgement proceeding without sacrificing his client's right to challenge the court's jurisdiction.").

Defendants' jurisdictional objections are property before the Court and have not been waived.

### B. Minimum Contacts

For this Court to exercise personal jurisdiction over a nonresident defendant:

> two requirements must be met. First, the nonresident defendant must be amenable to service of process under a State's long-arm statute. Second, the assertion of *in personam* jurisdiction must be consistent with the [Fourteenth] Amendment's [D]ue [P]rocess [C]lause. Because Texas' long-arm statute has been interpreted to extend to the limits of due process, [a federal district court in Texas] need only determine whether subjecting [the defendant] to suit in Texas would offend the [D]ue [P]rocess [C]lause of the [Fourteenth] Amendment.

*Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999) (internal citations omitted). *See also Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574, 580 (1999) ("Texas' long-arm statute . . . authorizes personal jurisdiction to the extent allowed by the Due Process Clause of the Federal Constitution." (citing *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 200 (Tex. 1985)). Therefore, the central question is solely whether the Court may exercise personal jurisdiction over Defendants PCP and Gera consistent with the Fourteenth Amendment.

The seminal decisions establishing modern personal jurisdiction doctrine are *International Shoe Co. v. Washington*, 326 U.S. 310 (1945); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985); and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), all three of which culminated in *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987).

"'[The] constitutional touchstone' of the determination whether an exercise of personal jurisdiction comports with due process 'remains whether the defendant purposefully established minimum contacts in the forum State,'" *id.* at 108-110 (quoting *Burger King*, 471 U.S. at 474), and, if so, whether exercising jurisdiction would otherwise "offend traditional notions of fair play and substantial justice," *International Shoe*, 326 U.S. at 316.

Minimum contacts "must have a basis in some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the

4

benefits and protections of its laws." *Asahi.* 480 U.S. at 109 (citing *Burger King*, 471 U.S. at 475). The manner in which courts apply the minimum contacts prong of the due process analysis is determined by what type of personal jurisdiction is alleged to exist, as there are two types: "specific" and "general." *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003). A defendant is said to have minimum contacts with the forum state for the purposes of specific jurisdiction where it has "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities . . . ." *Id.* at 381. By contrast, a party is said to have minimum contacts for the purposes of general jurisdiction if her contacts with the forum are "systematic and continuous," even if those contacts are not at all related to the conduct giving rise to the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

As an evidentiary matter, a plaintiff "need only present facts sufficient to constitute a *prima facie* case of personal jurisdiction . . . ." *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). Additionally, for the purposes of minimum contacts analysis, factual disputes are resolved in favor of the plaintiff. *Id.* at 217.

"Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show [that] the assertion of jurisdiction would be unfair;" *i.e.*, whether the exercise of personal jurisdiction would offend "traditional notions of fair play and substantial justice." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). Only a "compelling case" can cancel out a showing of minimum contacts. *Burger King*, 471 U.S. at 477. "It is rare to say [that] the assertion [of personal jurisdiction] is unfair after minimum contacts have been shown." *Wien*, 195 F.3d at 214.

Plaintiff first argues that PCP has established minimum contacts with Texas by way of placing its products into the stream of commerce. [Dkt. No. 32, ¶ 13-14]. According to Plaintiff, "[t]he appellate courts have consistently held that 'mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce.'" [Dkt. No. 32, ¶ 13 (*quoting Ruston Gas Turbines v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993)].

With its Application for Temporary Restraining Order, Plaintiff included a PIERS shipment record corresponding to a 2005 shipment from Premier Brands, a Dubai entity, to Defendant Sunny's Perfume, in Laredo, Texas. [Dkt. No. 4, Ex. A]. That document lists Defendant PCP as an "emergency contact." [Dkt. No. 4, Ex. A]. In this regard, Defendant Gera, in his affidavit, states that PCP "acted as a broker on behalf of Premier Brands International," and that PCP, with respect to that shipment, "acted only as an emergency contact at the request of the shipping line utilized by Premier Brands International . . . ." [Dkt. No. 30 at 10]. Plaintiff reads Gera's statements as an admission that Defendants "contracted to ship products to Defendant Sunny's Perfume on behalf of Premier Brands, and those products are alleged to be counterfeit by Plaintiffs, facts which alone should establish sufficient minimum contacts with Texas." [Dkt. No. 32, ¶ 14].

First, Plaintiff's interpretation of Gera's statements relies on several convenient assumptions the record does not bear. Gera does not suggest that he shipped products into Texas; in fact, it is not altogether clear if PCP has ever "shipped" *anything* on behalf of Premier Brands, as Gera only states that PCP "acted as a broker on behalf of Premier Brands." Also, Gera's affidavit does not suggest that the shipments for which PCP apparently served as an emergency contact

6

contained material Plaintiff would deem counterfeit Animale product, as neither party claims to know the actual contents of that shipment.

Second, the PIERS record produced by Plaintiff clearly reveals the "shipper" to be Premier Brands, not Defendant Gera or PCP. [Dkt. No. 4, Ex. A]. Thus, the shipment slip cannot fairly be viewed as evidence that Defendants PCP or Gera placed their products into the stream of commerce, since, according to the slip, (1) "the product" was that of Premier Brands, not PCP; and (2) Premier Brands was the entity that ostensibly placed that product into the stream of commerce, not PCP.

Plaintiff's invocation of *Lewis v. Fresne*, 252 F.3d 352 (5th Cir. 2001), does not strengthen its argument. In *Lewis*, the Fifth Circuit held that a single telephone call by the defendant into the forum was enough to establish minimum contacts. [Dkt. No. 32, ¶ 14]. Thus, as the argument goes, PCP's "shipment" into Texas alone established its purposeful availment. However, Plaintiff misses the point of *Lewis*; the court noted that in certain narrow circumstances a single act could establish minimum contacts "if that act gives rise to the claim being asserted." *Id.* at 358-59. Thus, for example, in the fraudulent communication context, *Lewis* applies if the *contents* of the *specific communication* are the allegedly injurious material representations. *See Id.* at 359 (citing *Wien Air Alaska Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) (stating that "when the *actual content* of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."(emphasis added))). Again, even if the Court were to deem PCP and/or Gera as the "shipper" of the aforementioned load, Plaintiff has presented no evidence that it will be able to show that such contained counterfeit Animale product. Without such a

showing, Plaintiff cannot make out a *prima facie* case of *specific* personal jurisdiction, the type of jurisdiction Plaintiff implicitly argues exists by invoking *Lewis*.[1]

Perhaps in an attempt to fill jurisdictional gaps with evidence supporting liability, Plaintiff next points to testimony by Defendant Sunil Tyagi to the effect that PCP shared the same address as the entity from which Sunny's received counterfeit Animale product, Perfume Network. [Dkt. No. 32, ¶ 15]. Plaintiff fails to indicate how this would give rise to personal jurisdiction over PCP or Gera. For example, Plaintiff never invokes principles of agency law or the "single business enterprise" doctrine to argue that Perfume Network's minimum contacts may be imputed to either PCP or Gera. Nor does Plaintiff suggest how it would defeat the "fiduciary shield doctrine," which would treat Gera's minimum contacts as those of PCP, possibly leaving Gera beyond the jurisdiction of this Court absent the successful invocation of one of the doctrine's exceptions. *See Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985). ("[A]n individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has *in personam* jurisdiction over the corporation . . . ."). Importantly, Plaintiff is correct that the Court should resolve fact issues regarding jurisdiction in its favor. However, to trigger this bias and establish minimum contacts, Plaintiff must do more than insinuate that a party is involved with wrongful conduct. Rather, it must present *genuine* fact issues that PCP and Gera themselves have established minimum contacts with Texas. This Animale has failed to do.

---

[1] Indeed, although Plaintiff devotes a portion of its brief to the important distinction between specific and general jurisdiction, Plaintiff nevertheless forgets this distinction when it argues that "[b]ecause Gera/PCP has been involved in the sale and/or importation of products in the state of Texas, there is sufficient minimum contacts . . . ." [Dkt. No. 33, ¶ 10]. Assuming PCP shipped the aforementioned load, if that shipment does not itself give rise to Plaintiff's causes of action, PCP's *general* contacts with Texas must be "systematic and continuous" to support a finding of purposeful availment. *See Helicopteros Nacionales*, 466 U.S. at 414 n.8.

### C.  Plaintiff's Motion for Continuance

Having failed to sufficiently establish Defendants' minimum contacts, as is its burden, *Wein*, 195 F.3d at 215, Plaintiff moves for a continuance in order to conduct jurisdictional discovery.

The Fifth Circuit has stated that a plaintiff is entitled to some discovery to establish jurisdiction. *See Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 856 (5th Cir. 2000); *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1148 (5th Cir. 1985); *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981) (A district court "must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss."). However such a right does not arise when the plaintiff fails to "describe the discovery they contend should have been allowed, what facts they hoped to obtain from such discovery, or how it would produce information that would support specific jurisdiction." *Kelly*, 213 F.3d at 856; *see also Jones v. Oriental Trading Co.*, 2005 U.S. Dist. Lexis 40582 (S.D. Tex. 2005) (Plaintiff's right to jurisdictional discovery arises if the plaintiff indicates "facts she hopes to obtain from . . . discovery to contradict the lack of personal jurisdiction" asserted by the defendant).

The specific jurisdictional allegations Plaintiff asserted in its Original Complaint as to PCP and Gera are that:

> Defendant B[h]arat Gera . . . is an individual and a domiciliary of . . . Texas, who is the owner of [PCP], and conducts and transacts business at the storefronts at 1302 Zaragoza St., Laredo, Texas, 78040, and 1320 Iturbide St., Laredo, Texas 78040-5240, [Dkt. No. 3, ¶ 10];
>
> Defendant [PCP] is a corporation, organized and existing under the laws of . . . New York, having its principle place of business at 259 Robby Lane, New Hyde Park, New York, and regularly conducts business at the storefronts at 1302 Zaragoza St., Laredo, Texas, 78040 and 1320 Iturbide St., Laredo, Texas 78040-5240, [Dkt. No. 3, ¶ 10].

Although, taken in a vacuum, these jurisdictional allegations seem specific and concrete, a plain and comprehensive reading of the Complaint indicates that Plaintiff has perfunctorily

9

pasted the address of Defendant Sunny's Perfume at the end of every paragraph identifying the various Defendants. Although a plaintiff need only state a *prima facie* jurisdictional case in their early pleadings, a plaintiff cannot manufacture jurisdictional plausibility with mere exhaustive pleading—by simply claiming globally that everyone "regularly conducts business" in the forum state. That Plaintiff does not maintain this proposition seriously is evidenced by its conspicuous failure to even suggest in the remainder of its Complaint, or in its Response, that any of the Defendants other than Sunny's physically or formally conducts business anywhere in the State of Texas.[2]

Of course, a plaintiff need not *prove* minimum contacts as a prerequisite to jurisdictional discovery, as, obviously, if a plaintiff could satisfy such a threshold there would be no need for further discovery. However, the Court reads *Kelly*, *Patterson*, and *Williamson* to mean that jurisdictional discovery is called for only when a plaintiff indicates early a belief in the truth of *specific* facts which, if established, would prove minimum contacts. The nearest Plaintiff comes to satisfying this standard is their assertion that "discovery will further reveal that both Gera and PCP are central to the perfume counterfeiting activities in Laredo, Texas and reveal additional evidence relating to their further contacts in Laredo and other Texas cities." [Dkt. No. 33, ¶ 8]. Plaintiff does not, however, state in jurisdictional terms how PCP and Geras' "centrality" to the alleged counterfeiting would establish minimum contacts.[3] In other words, Plaintiff does not instigate concrete and genuine fact disputes which, if resolved in its favor, would warrant the assertion of personal jurisdiction.

---

[2] In fact, Plaintiff does not seem to dispute the notion that Gera in fact resides in New York, as he avers, and is thusly not a "domiciliary of Texas," as Plaintiff initially claimed. [Dkt. No. 3, ¶ 10].

[3] Thus, for example, if "central" ultimately turns out to mean that PCP played a causally necessary but nevertheless unknowing or background role in the sale of counterfeiting goods in Texas, it is questionable that such would give rise to minimum contacts—*i.e.*, "*purposeful* availment."

Based only on a plaintiff's belief that a certain defendant is "connected" to wrongdoing, the Court will not allow plaintiffs to engage in open-ended jurisdictional "fishing expeditions" into which they enter only with the *hope* of discovering facts evidencing minimum contacts. This is an especially wise policy in contexts such as the instant, where every passing minute of Plaintiff's discovery means Defendants' continued restraint in disposing of their assets and conducting their business, all while the Court lacks a concrete basis to believe that its assertion of jurisdiction is constitutional. Accordingly, the Court will not allow Plaintiff to engage in jurisdictional discovery.

### III.    CONCLUSION

Plaintiff's Motion for Continuance is **DENIED**. Defendants PCP and Geras' Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED**. Accordingly, Defendants' Motion to Stay Preliminary Injunction is **DISMISSED as moot**.

IT IS SO ORDERED.

Done this 7th day of March, 2007, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**